# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL BOATMAN, | ) |
| Plaintiff, | ) |
| v. | ) No. 16-CV-08397 |
| HONIG REALTY, INC. d/b/a COLDWELL BANKER HONIG-BELL | ) Judge John J. Tharp, Jr. |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Defendant Honig Realty Inc. sells houses. Plaintiff Michael Boatman is a professional photographer who photographed several houses for Honig. Boatman alleges that Honig infringed his copyrights in the photographs by posting them on a number of real estate websites and altering his copyright management information. Honig has moved to dismiss all the counts of the complaint except for the breach of contract claim. For the reasons explained below, the motion to dismiss is granted in part and denied in part.

## BACKGROUND

As required when considering a motion to dismiss, the Court takes all well-pleaded allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *See Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 492-93 (7th Cir. 2011). Plaintiff Michael Boatman is a professional photographer living in Peoria, Illinois. Am. Compl. ("Compl.") ¶ 2. In 2015, Boatman was hired by defendant Honig Realty Inc. ("Honig") to take photographs of nine homes Honig was trying to sell. *Id*. at ¶ 6. Boatman took the photographs and registered each photograph with the U.S. Register of Copyrights. *Id*. When Boatman sent Honig the photographs, they contained embedded information listing his name, personal information, copyright, and the year. *Id*. at ¶ 12.

Boatman granted Honig a license which allowed Honig to use the photographs for the "listing and marketing" of the homes, with the license expiring when the listing agreement was terminated (*i.e.*, when the property sold). *Id*. at ¶ 9. The license also stated that "No usage rights are granted until full payment is made. Nontransferable to any 3rd party for any reason without prior written consent from the author and copyright owner Mike Boatman." *Id*. On a different document that Boatman included as a part of his photography proposal, he stated that the photograph usage rights were "restricted to the marketing of the listed property" and that the "[u]sage lease is nontransferable to 3rd parties." Compl. ¶ 11.

Honig uploaded the photographs to Zillow, a popular real estate website, "in order to advertise the Photographed Properties for sale." *Id*. at ¶ 13. Honig also uploaded some photographs to other real estate websites to advertise the properties, such as Realtor.com. *Id*. at ¶ 20. At least some of the photographs remained up on Zillow and Realtor.com after the properties were sold, despite the websites no longer having active listings for those properties. *See id.* at ¶¶ 14, 21. On July 23, 2015, Boatman spoke to two of Honig's employees about their uploading of the photographs to Zillow, although it is not clear that he voiced any complaints regarding the photographs appearing on Zillow. *See id.* at ¶ 15. Honig notes that pop-up advertisements sometimes appear when visiting the Realtor.com pages featuring the photographs. *See* Compl. ¶ 27. Zillow has also taken at least one photograph and used it on another segment of the website, called "Zillow Digs," which showcases certain home features. *Id*. at ¶ 28.

Boatman also complains that Honig "intentionally removed" the copyright management information ("CMI") that he had embedded in the file. *Id*. at ¶ 51. He further alleges that Honig added a watermark reading "PAAR," which he believes is an acronym for the Peoria Area

Association of Realtors. *Id.* at ¶ 31. At least one of the photographs in the complaint shows a PAAR watermark on a photograph in a Realtor.com listing. *Id.* at ¶ 20.

Boatman twice attempted to contact Honig regarding what he believed was the improper use of his photographs. In summer 2015, Boatman called one of Honig's real estate agents and informed her "of the improper publication of certain of the Registered Photographs." Compl. ¶ 33. The agent allegedly agreed that the use of the photographs violated the terms of the lease and Boatman's copyright, but Honig took no action in response. *Id.* On August 28, 2015, Boatman's lawyer sent a letter to Honig's president "outlining in detail the infringement and CMI violations described above," but Honig allegedly "took no action to correct the problem or mitigate the harm." *Id.* at ¶ 34.

Boatman filed this lawsuit on August 26, 2016 and amended his complaint on October 17, 2016. The current complaint brings four claims: direct copyright infringement, contributory copyright infringement, violation of the Digital Millennium Copyright Act ("DMCA") (17 U.S.C. § 1202), and breach of contract. Honig has moved to dismiss the first three counts.

## DISCUSSION

Honig raises a number of reasons why Boatman has failed to state a claim under Rule 12(b)(6). As an initial matter, it objects that Boatman has "pled no facts" that Honig had knowledge or intent with regard to its alleged contributory infringement or DMCA violations. *See* Def.'s Mem. at 6, 8. Knowledge and intent, however, "may be pleaded generally (which is to say, in a conclusory fashion)." *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). Boatman has generally alleged that Honig knew its actions "were substantially certain to result in direct infringement" and that it "intentionally removed" the relevant CMI.[1] Compl. at ¶¶ 43, 51. Those

---

[1] It is true that the DMCA requires that a defendant have intentionally removed the information "knowing" or "having reasonable grounds to know" that such action "will induce,

3

allegations are sufficient at this stage. With that concern addressed, the Court moves on to the substantive objections to Boatman's claims.

**I. Direct Infringement**

An entity that holds a copyright license, such as Honig, can only commit copyright infringement (rather than breach of contract) if it exceeds the scope of the license. *See Bergt v. McDougal Littell*, 661 F. Supp. 2d 916, 921 (N.D. Ill. 2009) (*citing I.A.E., Inc. v. Shaver,* 74 F.3d 768, 775 (7th Cir. 1996)). Copyright licenses are to be construed like any other contracts and interpreted under state law. *Automation by Design, Inc. v. Raybestos Prods. Co.*, 463 F.3d 749, 753 (7th Cir. 2006). Honig argues that its conduct (uploading the photographs to Zillow and Realtor.com to market the properties) falls squarely within the license which was explicitly for "listing and marketing" the properties. *See* Def.'s Mem. at 4. Boatman claims that because the lease states it is "[n]ontransferable" without Boatman's consent, distributing the photographs to any third party (even for listing and marketing) was outside the scope of the lease.[2] *See* Pl.'s Resp. at 4.

"The interpretation of an unambiguous contract is a question of law that can be decided at the motion to dismiss stage." *Golden v. Wiznitzer*, No. 13 C 9003, 2014 WL 1329397, at *1 (N.D. Ill. Apr. 2, 2014) (*citing De Lage Landen Fin. Servs., Inc. v. M.D.M. Leasing Corp.*, No. 07 C 0045, 2007 WL 4355037, at *2 (N.D. Ill. Dec. 10, 2007)). "A contract is ambiguous only

---

enable, facilitate, or conceal an infringement." 17 U.S.C. § 1202(b). Boatman's complaint does not use those exact words. The Court, however, finds it is a reasonable inference at this stage that ***intentionally*** removing all indicators of Boatman's identity and copyright plausibly would have provided "reasonable grounds to know" that such an action would facilitate or conceal infringement.

[2] In his response, Boatman appears to attempt to include Zillow and Realtor.com's continued use of the photographs after the listings were removed as a part of Honig's direct conduct. *See* Pl.'s Resp. at 5-6. The complaint, however, does not allege that Honig had anything to do with the photographs' continued appearance on the site or their migration to new areas of the websites.

where a reasonable person could find its terms susceptible to more than one interpretation." *Automation by Design, Inc.*, 463 F.3d at 754. When encountering similar language regarding a "non-transferable" license, the Seventh Circuit found the language "unambiguously" meant that the licensee's rights could not be transferred. *Id*. at 755. The Seventh Circuit rejected the understanding that the "non-transferable" language meant that the physical designs could not be transferred to a third party to effectuate the purpose of the license. *See also Klein v. Caremark Int'l*, 329 Ill. App. 3d 892, 907 (2002) (rejecting contract interpretation that would "frustrate the entire purpose of the Agreement").

The situation is identical here. The only reasonable interpretation of the license is that Honig could not transfer ***the license itself*** to a third party. It does not prevent Honig from distributing the photographs for the stated purposes of listing and marketing the homes. The complaint concedes that when Honig uploaded the photographs to the websites, it was doing so to advertise the properties. Therefore, Honig acted within the scope of its license when it uploaded the photographs and did not directly infringe Boatman's copyright. The motion to dismiss the direct infringement claim is granted.

**II. Contributory Infringement**

Honig next argues that the contributory infringement claim is also within the scope of the license. The license, however, clearly states that it expires at the termination of the listing agreement. *See* Compl. ¶ 9. Boatman's complaint is that the photographs remained on the websites after the relevant listing agreements were terminated. *See, e.g., id.* at ¶ 14. Therefore, Boatman has alleged conduct that would fall outside the temporal scope of the license and could constitute infringement.

Honig next argues that Boatman has failed to allege Honig's knowledge that Zillow or Realtor.com would engage in infringing conduct. As discussed above, the Court must accept the facts of the complaint at this stage and the complaint currently pleads such knowledge with sufficient particularity. *See id*. at ¶ 43. Although Honig may very well be correct that it lacked knowledge at the relevant time, *see* Def.'s Reply at 7, Boatman is not required to plead the specifics of what knowledge Honig had or when it gained that knowledge at this stage. Therefore, the motion to dismiss the claim for contributory infringement is denied.

**III. DMCA Violation**

Boatman has pled two different incidents that might violate the DMCA – the removal of his CMI (copyright management information) and the addition of the PAAR watermark. As discussed above, Boatman has sufficiently pled Honig's intent and knowledge and Boatman has at least raised the inference that Honig should have known the removal of CMI would facilitate copyright infringement. Honig raises no other reasons the removal of the embedded CMI claim cannot go forward.

In a footnote to its motion, Honig asserts that the watermark allegation cannot be a violation of § 1202(b) because that section covers only the removal or alteration of CMI while § 1202(a) covers the addition of false copyright information. *See* Def.'s Mem. at 8, fn. 2. At least one court has allowed a § 1202(b) claim that a watermark was added to move past a motion to dismiss when the copyright owner had included a different watermark on the original image. *See Goldstein v. Metro. Reg'l Info. Sys., Inc.*, No. CV TDC-15-2400, 2016 WL 4257457, at *9 (D. Md. Aug. 11, 2016). That court found that § 1202(a) would cover cases "where false CMI was added to an image that otherwise had no CMI." *Id*. A court in this district rejected a § 1202(b) claim (and allowed a § 1202(a) claim) when a false watermark was added to a photograph that

did not otherwise contain CMI. *See Merideth v. Chicago Tribune Co., LLC*, No. 12 C 7961, 2014 WL 87518, at *3 (N.D. Ill. Jan. 9, 2014).

This case obviously falls in between the situations described above. The complaint alleges that CMI in one form was originally attached to the photograph, and that Honig removed that CMI and replaced it with a different form of (inaccurate) CMI.[3] The question therefore becomes whether new CMI of a different nature still qualifies as an alteration under § 1202(b) or whether it is an addition under § 1202(a).

The Court finds that Boatman has stated a claim under § 1202(b). While a plaintiff perhaps could split an alteration claim into two pieces – a removal claim under § 1202(b) and then an addition claim under § 1202(a) – the fact that the statute plainly includes alterations in § 1202(b) suggests such contortions are not required. If Boatman had included a note at the bottom of his photographs reading "by Mike Boatman" and Honig had altered note to read "by PAAR" (or "by Honig"), that would be an alteration in violation of § 1202(b). Similarly, if Boatman had included his "by Mike Boatman" note and Honig had changed it to "© Honig Realty," that would surely also constitute an alteration even though arguably the CMI is of different type (one identifies author, the other identifies a copyright holder). The Court has no trouble extending that logic such that Honig removing embedded CMI and replacing it with contradictory watermarked CMI is still an alteration. Therefore, the motion to dismiss the

---

[3] By statute, CMI includes "[t]he name of, and other identifying information about, the author of a work" and "[t]he name of, and other identifying information about, the copyright owner of the work." 17 U.S.C. § 1202(c). The parties do not appear to contest that identifying PAAR as the author or copyright owner via a watermark constitutes CMI.

DMCA count is denied.[4] Adding inconsistent information to the existing CMI "alters" the existing CMI.

*   *   *

For the reasons stated above, the motion to dismiss is granted as the Count I (direct infringement) and denied as to Counts II (contributory infringement) and III (DMCA violation).

Dated: September 5, 2017

John J. Tharp, Jr.
United States District Judge

---

[4] The Court further notes that a plaintiff is not required to plead legal theories in his complaint. *See Whitaker v. Milwaukee County*, 772 F.3d 802, 808 (7th Cir. 2014) ("it is factual allegations, not legal theories, that must be pleaded in a complaint"). To the extent that Boatman should have laid out the watermark as a separate claim under § 1202(a) rather than as part of an alteration claim under § 1202(b), that does not warrant dismissal of his claim because he has pled sufficient facts to state his claim.

8